# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| AVASANT, LLC, <br><br>          Plaintiff, <br><br> v. <br><br> PRESBYTERIAN HEALTH PLAN, INC.; <br> PRESBYTERIAN HEALTHCARE SERVICES, <br><br>          Defendants. | Case No.: |

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff Avasant, LLC ("Avasant" or "Plaintiff"), by counsel, alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages arising from breach of contract by Presbyterian Health Plan, Inc. ("PHP"), a New Mexico corporation and Presbyterian Healthcare Services ("PHS"), a New Mexico non-profit corporation. (PHP and PHS, together with their agents, employees, and coconspirators are referred to collectively herein as "Presbyterian" or "Defendant.")

2. Presbyterian engaged Avasant to provide consulting services for information technology and outsourcing between March 2016 and February 2017. Despite Presbyterian approving all of Avasant's services during the engagement, Presbyterian continues to not meet its payment obligation—including expenses incurred by Avasant consultants for transportation, accommodations, and meals while traveling to Albuquerque, N.M. Rather, eight months after the engagement ended, Presbyterian looks to perform an after-the-fact assessment of Avasant's services in bad faith. Presbyterian continues to string along Avasant even though it requested and obtained the benefit of Avasant's services, declined to exercise its right to suspend or terminate the contract at any time, and provided approvals of Avasant's services throughout the term of the contract while several high-level executives, including Brandon Fryar, President of PHP and Lisa Farrell Lujan, former President of PHP, attended multiple meetings. In seeking payment, Avasant first received assurances that payments were either in process of being paid or, in some instances,

actually in the mail. Now, over eight months after Avasant last provided services to Presbyterian, Presbyterian's Chief Information Officer, Sony Jacob, recently stated that Presbyterian will continue to breach its payment obligation in bad faith while it performs its belated review. Avasant now seeks to obtain the amount owed to it under its contract with Presbyterian.

## THE PARTIES

3. Avasant is a limited liability company organized under the laws of the State of California, and having its principal place of business at 1960 East Grand Ave., Suite 1050, El Segundo, CA 90245. Avasant is duly registered and in good standing with the New Mexico Secretary of State to do business in the State of New Mexico.

4. On information and belief, Defendant Presbyterian Health Plan, Inc. ("PHP") is a New Mexico company with a principal place of business at 9521 San Mateo Blvd, Albuquerque, NM 87113, and doing business in this jurisdiction and elsewhere in the United States.

5. On information and belief, Defendant Presbyterian Healthcare Services ("PHS") is a New Mexico non-profit corporation with a principal place of business at 9521 San Mateo Blvd, Albuquerque, NM 87113, and doing business in this jurisdiction and elsewhere in the United States.

6. On information and belief, PHS is the parent company and controls finances and decision-making for PHP. PHS is an "Affiliate" of PHP, as that capitalized term is used and defined in the Master Services Agreement described below in Paragraph 10. Accordingly, PHS is a party to and is liable under the MSA and the other contract documents to the same extent as PHP.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Avasant is a citizen of the State of California. Defendants PHP and PHS are citizens of the State of New Mexico. Neither of the Defendants is a citizen of the State of California.

8. The amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest and costs.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2). This is the District in which a substantial part of the events, acts or omissions giving rise to the claims herein occurred.

**FACTS COMMON TO ALL CLAIMS**

10. Presbyterian and Avasant entered into (1) a Master Services Agreement ("MSA"), attached hereto as <u>Exhibit 1</u>, on March 7, 2016 that stated the terms and conditions between Presbyterian and Avasant wherein Presbyterian engaged Avasant to provide certain consulting services; (2) a Statement of Work (the "Sourcing SOW") , attached hereto as <u>Exhibit 2</u>,, effective March 7, 2016, pursuant to such MSA that specified details of an engagement for Avasant to provide advisory support to Presbyterian and develop a sourcing strategy for Presbyterian's outsourcing relationships (the "SS Work Stream") and support sourcing contract negotiations (the "ST Work Stream"); (3) a series of amendments extending the term of the Sourcing SOW, attached hereto as <u>Exhibit 3</u>,; (4) a Statement of Work (the "ME SOW") , attached hereto as <u>Exhibit 4</u>,, effective September 6, 2016, to support the drafting of a request for proposal and selection of a vendor of information technology solutions for Medicaid encounters (the "ME Work Stream"); and (4) an amendment extending the term of the ME SOW, , attached hereto as <u>Exhibit 5</u>, (The Sourcing SOW, ME SOW, and all amendments described here are collectively referred to as the "Presbyterian SOWs.") The Presbyterian SOWs included descriptions of the scope of work, roles and responsibilities for Presbyterian and Avasant personnel, and pricing for Presbyterian as consideration for Avasant's performance of its services. Moreover, the SOWs require payment "within 30 days of receipt of invoice."

11. The Presbyterian SOWs commenced on March 7, 2016. Presbyterian continued to request services and Avasant continued to provide services through the termination of the Presbyterian SOWs, on February 10, 2017. Through February 10, 2017, Avasant was fully engaged on Presbyterian's information technology strategy and its consultants continued to travel to Albuquerque for on-site work at Presbyterian's offices.

12. To date, Avasant has invoiced Presbyterian for at least $2,237,585.67 in fees and $124,389.19 in expenses for services it performed under the Presbyterian SOWs. Of these

amounts, Presbyterian has only paid Avasant $1,875,955.65 in fees and $53,489.58 in expenses. Presbyterian has failed to pay the full amounts without legal or contractual justification, despite numerous promises from Presbyterian executives that payment was being processed. Accordingly, Presbyterian has committed a material breach of the Presbyterian SOWs because it is withholding $361,630.03 in properly invoiced fees and $70,899.61 in expense reimbursements more than eight months after Avasant's last invoice. Presbyterian has committed this material breach in bad faith, without justification, and in express violation of contractual obligations which Presbyterian has expressly and implicitly acknowledged. Avasant has suffered substantial damages as a result of its reliance on Presbyterian's promises, which include loss of the full contract price, interest accruing from the refusal to issue expected payments, financial hardship due to the operational impact of Presbyterian's refusal to fulfill its promises, and opportunity cost impacts as Avasant could have redeployed its resources to other consulting engagements and sales activities, which it instead had devoted to Presbyterian.

13. In the Presbyterian SOWs, Presbyterian and Avasant agreed on a weekly rate on a time and materials basis to be invoiced by Avasant every two weeks. The rate per work stream was $21,500 per week, with Avasant delivering a total of three work streams.

14. The MSA also includes a clause that requires Presbyterian to reimburse Avasant for "travel expenses incurred by [Avasant] in the provision of Services under this Agreement in amounts not to exceed the Presbyterian Healthcare Services Travel Policy." In violation of the plain meaning of the Presbyterian SOWs, Presbyterian has not reimbursed Avasant for a majority of the expenses, including for standard travel, lodging, and meals.

15. Section 1.2 of the MSA includes a procedure for Presbyterian to reject any services performed by Avasant that, in Presbyterian's sole discretion, does not conform to the requirements of the Presbyterian SOWs. That section states,

> "Unless otherwise provided in a SOW, Presbyterian shall have fifteen (15) business days following completion of Services (the 'Approval Period') in which to review the Services so as to verify that such Services substantially and materially conforms to the functional and/or technical requirements as specified in this Agreement or the applicable SOW ('Approval Criteria')."

At no point did Presbyterian use the procedure set forth in Section 1.2 to indicate a disapproval of the services provided by Avasant.

16. By the plain language of the Presbyterian SOWs, Presbyterian accepted the obligation to pay Avasant for each week of services performed by Avasant at the weekly rates. On several occasions, Avasant provided Presbyterian additional Statements of Work to extend the term of the SS Work Stream, ST Work Stream, and ME Work Stream. Avasant continued to provide services under the additional Statements of Work through February 10, 2017.

17. The Sourcing SOW lasted for a period of 46 weeks. It commenced on March 7, 2016 and expired on January 27, 2017. Over the course of the Sourcing SOW, Presbyterian used a total of 46 weeks of Avasant's services for the SS Work Stream and 44 weeks for the ST Work Stream at the negotiated weekly rate of $21,500 per week per work stream. As evidenced by the invoices paid to date, Presbyterian paid invoiced fees for 40 weeks for each of the SS Work Stream and ST Work Stream. Presbyterian's continued withholding of the remaining 10 weeks of fees for services performed is therefore without justification.

18. The ME SOW lasted for a period of 12 weeks. It commenced on September 6, 2016 and expired on February 10, 2017. Over the course of the ME SOW, Presbyterian used a total of 12 weeks of Avasant's services at the negotiated weekly rate of $21,500 per week. As evidenced by the invoices paid to date, Presbyterian paid invoiced fees for 6 weeks for each of the SS Work Stream and ST Work Stream. Presbyterian's continued withholding of the remaining 6 weeks of fees for services performed is therefore without justification.

19. The Presbyterian SOWs provided a mechanism for Presbyterian to terminate services with 30 days' notice at any time during the period of performance. Avasant provided this mechanism in good faith to support Presbyterian's management of the engagement. Presbyterian did not exercise its right to terminate the Presbyterian SOWs. Therefore, Presbyterian was contractually obligated to pay Avasant the weekly fee for its services performed through the period ending February 10, 2017.

20. The Sourcing SOW began on March 7, 2016, with an initial estimated completion date of May 17, 2016. Avasant regularly kept Presbyterian aware of projected timelines. On multiple occasions Avasant informed Presbyterian that, due to scope and scheduling adjustments, the time frame to complete the project would extend. On June 28, 2016, Avasant presented Presbyterian with a statement of work (the "Sourcing Extension SOW") that stated the Sourcing SOW "shall continue till such time as PHP and Avasant agree on concluding both the [SS and ST] work streams. PHP will have the right to stop any or both the work streams at any time, through one week's written notice to Avasant." At no point did Presbyterian stop either work stream. Moreover, Presbyterian raised no objection or concern and therefore approved Avasant to continue to perform its services through such aforementioned dates.

21. After Avasant presented the Sourcing Extension SOW to Presbyterian, Avasant continued to work on the SS and ST Work Streams. Between June 28, 2016 – October 15, 2016 and October 30, 2016 – December 17, 2016, Presbyterian continued to make payments for the SS Work Stream and between June 28, 2016 – November 26, 2016 and December 25, 2016 – December 31, 2016 for the ST Work Stream in accordance with the Sourcing Extension SOW. Presbyterian failed to make payments between October 16, 2016 – October 29, 2016 and December 18, 2016 – January 14, 2017 for the SS Work Stream and between November 27, 2016 – December 24, 2016 for the ST Work Stream.

22. Presbyterian's has no justification for —and has not even attempted to explain— withholding payments. In fact, by making payments in December 2016, Presbyterian admitted that Avasant continued to perform and Presbyterian accepted Avasant's work during that time. That is, Presbyterian cannot justify making payments in December while withholding payment for work performed at an earlier time.

23. On December 23, 2016—over six months since Avasant first presented the Sourcing Extension SOW, during which time Avasant continuously provided services to Presbyterian—Nishant Verma, a Principal at Avasant, sent an email to Lory MacArthur, a Contracts Specialist for PHS, and Kathleen Rudd, Vice President of Information Technology for PHP, explaining the weekly payment structure without a termination date of the Presbyterian

SOWs. In response to Mr. Verma's email, Ms. Rudd stated, "This is correct." Ms. Rudd's email is an acknowledgement by Presbyterian that Avasant and Presbyterian had an established course of dealing in which Avasant would provide consulting services to Presbyterian in return for payment on a weekly basis.

24. Following Avasant's notification that the time to perform the project would extend indefinitely through 2016 and Presbyterian's express, implied, and tacit approval of Avasant's continued support, Avasant prepared several invoices to cover such additional weeks of support. Avasant relied on Ms. Rudd's representations and continued supporting Presbyterian under her direction. At no point did Presbyterian raise the issue of Avasant's fees or any matter of concern or objection. Moreover, Presbyterian paid certain invoices and declined to exercise its rights to suspend or terminate the Presbyterian SOWs and continued to receive consulting services from Avasant through February 10, 2017.

25. Since April 2017, Avasant has continually requested payment of outstanding invoices. Ms. Rudd and Larry Romero, Supply Manager at PHP, have responded in writing on several occasions that payment was either being processed or on its way. Payment was never received by Avasant, however. On October 10, 2017, Avasant finally received a payment of $64,500.

26. Presbyterian and Avasant had a valid, binding agreement for services under the agreed upon weekly fee. Avasant performed services under the Presbyterian SOWs, and Presbyterian approved Avasant to continue to perform Services beyond initial estimates. Presbyterian is now in material breach of the Presbyterian SOWs by withholding payment to Avasant for a substantial amount of fees and expenses in respect of services specifically requested by Presbyterian.

### Presbyterian Agreed to a Weekly Fee

27. In the Presbyterian SOWs, Avasant and Presbyterian agreed to a weekly fee structure.

28. Presbyterian was obligated to pay the weekly rate until the conclusion of the Presbyterian SOWs. At all times during the Presbyterian SOWs, Presbyterian bore the contractual

duty and obligation to pay Avasant the Weekly Fee Option for each week that Avasant performed services. Presbyterian's only options to avoid paying Avasant under the Presbyterian SOWs were to issue a stop notice or to issue a termination notice in accordance with the terms of the SOW. Presbyterian did not exercise either of these options.

29. At all times during the Presbyterian SOWs, Presbyterian had the sole discretion to terminate the contract with 30 days' notice.

30. Presbyterian did not terminate the Presbyterian SOWs.

31. Avasant's consultants spent nine months in 2016 and one-and-a-half months in 2017 providing services to Presbyterian under the Presbyterian SOWs in reliance on Presbyterian's promises, for which Presbyterian now refuses to pay. That represents a loss to Avasant in fees but also lost opportunity to deploy such resources to other projects at standard corporate rates over such time period.

**Presbyterian Was Aware of and Accepted Each Extension to the Project Timeline**

32. The Presbyterian SOWs began on March 7, 2016.

33. At all times during the Presbyterian SOWs, Presbyterian had the sole discretion to stop the contract indefinitely and suspend its obligation to pay the weekly rate during such period of suspension.

34. At no time did Presbyterian raise any concern, issue, or problem with the work stream timelines. Presbyterian continued to request Avasant to perform its services. Avasant obliged and its consultants traveled to Albuquerque, NM on a weekly basis during the engagement.

**Presbyterian Repeatedly Promised to Pay Its Unpaid Fees and Expenses**

35. On at least six occasions since Avasant last provided services under the Presbyterian SOWs, Presbyterian promised that it was either processing payment or payment had already been sent. No payment was received as a result of those promises. Presbyterian's promises are an acknowledgement that Avasant performed services for Presbyterian, Presbyterian accepted those services, and Avasant is owed payment for those services.

36. On April 3, 2017, Mr. Verma, a Principal at Avasant, attempted to discuss payment with Ms. Rudd. Ms. Rudd did not provide any guidance until April 19, 2017, wherein she stated that she had "signed those invoices." No payment was received.

37. On April 24, 2017, Ms. Rudd sent an email to Mr. Romero, and Mr. Verma informing and instructing Mr. Romero that "I have sent these back to you stamped. Please release the ones that need to be released for payment." Avasant did not receive any such payments.

38. On May 8, 2017, Mr. Verma informed Ms. Rudd and Mr. Romero via email that Avasant had not yet received any payment of the invoices discussed on April 24, 2017. Mr. Romero replied that "I believe a few were approved last week. More should be forth coming." Again, Avasant did not receive any such payments.

39. On May 11, 2017, Mr. Verma texted Ms. Rudd and informed her that he had been "asking Larry [Romero] about the payments, and he says some [had] been sent last week." Ms. Rudd replied in an email that "I am in with Larry and he said that the check run is today and they should be paid." The payments referred to by Ms. Rudd and Mr. Romero were not received.

40. On May 19, 2017, Mr. Romero emailed Mr. Verma stating, "I just followed up with our AP department. Your invoices are queued up for payment this week." Avasant did not receive any payment.

41. On June 14, 2017, Mr. Verma provided additional information to Ms. Rudd related to expense reimbursement. Mr. Verma also explained to Ms. Rudd that expense reimbursement is unrelated to payment of consulting fees. Though Ms. Rudd did not dispute the distinction, Presbyterian continued to withhold payment for both fees and expenses. Moreover, Ms. Rudd suddenly claimed that "[the payments] are probably on hold due to the audit" of expense reimbursements with respect to compliance with Presbyterian's policies. Ms. Rudd did not provide any justification for the continued withholding of fee payments.

42. Mr. Verma again texted Ms. Rudd on June 15, 19, and 20, 2017, regarding payment of fee invoices. Ms. Rudd did not respond to those messages until June 20, 2017, and indicated Presbyterian now required further information related to expense reimbursement. Ms. Rudd again did not provide any justification for the continued withholding of fee payments.

43. On June 28, 2017, Mr. Verma again contacted Ms. Rudd regarding the invoices. Rather than providing any updates or explanation as to why Avasant had not received payment of fees, Ms. Rudd merely instructed Mr. Romero to provide Presbyterian's reimbursement policy to Mr. Verma.

44. On July 5, 2017, Mr. Verma again contacted Ms. Rudd. Ms. Rudd again did not provide any guidance with respect to unpaid fee invoices.

45. On July 7, 2017, Damon Alvarez, Avasant's Financial Controller, emailed Mr. Romero and Ms. Rudd regarding a reconciliation of expense invoices. Neither Mr. Romero nor Ms. Rudd replied until July 12, 2017. On July 12, 2017, Mr. Verma again contacted Ms. Rudd regarding unpaid fee invoices. Ms. Rudd once again instructed Mr. Romero to "see where [payments] are at."

46. On July 19, 2017, Mr. Alvarez sent a listing of all unpaid invoices to Mr. Romero—a listing that was sent to Presbyterian several times prior.

47. On July 28, 2017, Dev Batta, Associate General Counsel for Avasant, sent a letter to Ms. Rudd and Mr. Romero regarding the unpaid invoices. Mr. Batta did not receive any communication from Presbyterian in reply to his letter.

48. On September 7, 2017, Sony Jacob, Chief Information Officer at Presbyterian, emailed Mr. Verma requesting "all [of Avasant's] work product" created in accordance with the Presbyterian SOWs. Mr. Jacob was not a part of the day-to-day operations of the Presbyterian-Avasant engagement. Mr. Jacob's email was an indication that Presbyterian would not honor its contract and Mr. Jacob would instead perform an after-the-fact analysis on Avasant's work product. This request came more than seven months after Avasant's delivery of services completed.

49. Mr. Jacob refused—and continues to refuse—to speak directly with any representative of Avasant except for a brief phone call with Avasant's CEO, Kevin Parikh. Following his September 7, 2017, email, Mr. Jacob said he would not make himself available for a phone call until October 4, 2017. In the interim, as a show of good faith and at Presbyterian's

request, Avasant provided Presbyterian with copies of its invoices and certain deliverables requested by Presbyterian.

50. On October 3, 2017, Mr. Jacob wrote to Mr. Parikh and made the unfounded and untrue accusation that Avasant was "overbilling" Presbyterian. Moreover, Mr. Jacob stated, "I need to be comfortable with if we owe you anything at all, we have already paid $1.8MM for work that I personally don't think meets my standards." In making his statement, and despite not being involved with delivery of Avasant's services, Mr. Jacob's intent was clear—a repudiation of the contract whereby Presbyterian would continue to string along Avasant and breach the contract.

51. On October 3, 2017, Mr. Jacob again delayed any resolution of Presbyterian's non-payment and canceled the call scheduled for October 4 without providing a date for rescheduling. Again, Mr. Jacob's intention was to avoid paying Avasant's invoices

**Presbyterian Owes Avasant At Least $432,529.64 in Unpaid Fees and Expenses**

52. Based on an initial estimated project timeline, Avasant's engagement with Presbyterian was to end on May 17, 2016. On May 17, 2016, Mr. Verma sent an amendment to the Sourcing SOW (the "First Sourcing SOW Amendment") to Ms. Rudd for signature, extending the term of the SOW to June 17, 2016. Despite Presbyterian not signing and returning the First Sourcing SOW Amendment, Avasant continued to perform services in Albuquerque. Presbyterian continued to both receive the benefit of those services and pay its invoices under the First Sourcing SOW Amendment.

53. On June 9, 2016, Mr. Verma sent a second amendment to the Sourcing SOW (the "Second Sourcing SOW Amendment") to Ms. Rudd for signature, extending the term of the SOW to June 28, 2016. Despite Presbyterian not signing and returning the Second Sourcing SOW Amendment, Avasant continued to perform services in Albuquerque. Presbyterian continued to both receive the benefit of those services and pay its invoices under the Second Sourcing SOW Amendment.

54. On June 28, 2016, Mr. Verma sent a third amendment to the Sourcing SOW (the "Third Sourcing SOW Amendment") to Ms. Rudd for signature, extending the term of the SOW

to indefinitely and maintaining a weekly payment structure. Despite Presbyterian not signing and returning the Third Sourcing SOW Amendment, Avasant continued to perform services in Albuquerque. Presbyterian continued to receive the benefit of those services through January 15, 2017 but only paid a portion of its invoices under the Third Sourcing SOW Amendment.

55. On December 23, 2016—six months after Avasant presented the Third Sourcing SOW Amendment to Presbyterian, during which time Avasant's consultants traveled weekly to Albuquerque to provide services and Presbyterian continued to receive the benefit of those services—Lory MacArthur, Contracts Specialist for PHS, sent an email to Mr. Verma and Ms. Rudd inquiring about the Sourcing SOW. In reply, Mr. Verma explained,

> "The original SOW we had signed was based on a weekly rate and a 10 week duration (ending May 16, 2016), with a total dollar figure of $430,000.
>
> Post that, since the total duration of our work was not known, we had moved to a week to week construct, with PHP having the rights to terminate at any point.
>
> Avasant had submitted an SOW extension in line with that understanding (attached) – as approved by [Ms. Rudd]. In that extension, we had specified a weekly rate, but not a cap, since the duration of required work was unknown. Avasant has continued to work under this understanding in good faith since, to make sure there are no disruptions or delays waiting for SOW execution."

Ms. Rudd agreed with Mr. Verma's explanation and replied to Mr. Verma's email, stating, "Hi Lory, This is correct."

56. Under the Third Sourcing SOW Amendment, Presbyterian paid for services for both the SS Work Stream and ST Work Stream through October 15, 2016. Inexplicably, Presbyterian did not pay its invoice for the SS Work Stream for work performed between October 16, 2016 – October 29, 2016, paid for work performed between October 30, 2016 – December 17, 2016, then again did not pay for work performed between December 18, 2016 – January 15, 2017. Presbyterian gave no justification to withhold such payments, did not exercise any of rights to suspend or terminate the services, and received the benefit of Avasant's services. Presbyterian's decision to stop payment in October 2016, resume payment later that month, and then stop payment again in December demonstrates that Presbyterian acted in an arbitrary manner. The unpaid invoices for the SS Work Stream total $135,611.25.

57. Regarding the ST Work Stream, Presbyterian did not pay its invoice for work performed between November 27, 2016 – December 24, 2016 but paid for work performed between December 25, 2016 – December 31, 2016. Again, Presbyterian gave no justification to withhold such payments, did not exercise any of rights to suspend or terminate the services, and received the benefit of Avasant's services. Presbyterian's decision to inexplicably stop payment in November 2016 but resume payment in December again demonstrates that Presbyterian acted in an arbitrary manner. The unpaid invoices for the ST Work Stream total $90,407.50.

58. Regarding the ME Work Stream, Presbyterian did not pay its invoice for work performed between October 24, 2016 – November 28, 2016 but paid for work performed between January 1, 2017 – January 15, 2017. Once again, Presbyterian gave no justification to withhold such payments, did not exercise any of rights to suspend or terminate the services, and received the benefit of Avasant's services. Presbyterian's decision to inexplicably stop payment in October 2016 but resume payment in January 2017 once again demonstrates that Presbyterian acted in an arbitrary manner. The unpaid invoices for the ME Work Stream total $135,611.28.

### Presbyterian Owes $361,630.03 in Invoiced Fees For Which Presbyterian Refuses to Pay Without Justification and in Bad Faith

59. Presbyterian presently owes Avasant $361,630.03 in invoiced fees plus interest for the SS Work Stream, ST Work Stream, and ME Work Stream. Based on the foregoing, Presbyterian has no contractual or legal justification to withhold such payment.

### Presbyterian Owes Avasant $70,899.61 in Expense Reimbursements

60. The MSA states, "Presbyterian will reimburse approved travel expenses incurred by the Contractor in the provision of Services under this Agreement in amounts not to exceed the Presbyterian Healthcare Services Travel Policy."

61. Avasant's consultants traveled to Albuquerque, NM on a weekly basis during the engagement, incurring transportation, hotel, and meal expenses.

62. Avasant submitted expense reimbursements to Presbyterian totaling $124,389.19. For each submission, Avasant provided both a breakdown of costs and associated receipts.

63. Presbyterian refuses to reimburse Avasant for $70,899.61 of Avasant's reimbursement requests.

64. Presbyterian has provided no justification for its refusal to reimburse Avasant's expenses.

65. Presbyterian owes Avasant full reimbursement of the $70,899.61 in expenses submitted by Avasant.

66. Therefore, the total amount of invoiced and unpaid fees and expenses Presbyterian owes to Avasant is $432,529.64 plus interest.

67. Because of Presbyterian's breach of the Presbyterian SOWs, Avasant is owed at least $432,529.64 in unpaid fees, unreimbursed expenses, and damages plus interest, attorney's fees, and costs.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract by PHP)

68. Avasant re-alleges and incorporates paragraphs 1-67 as though fully set forth herein.

69. On March 7, 2016, PHP and Avasant entered into a written contract (*i.e.*, the MSA and Presbyterian SOWs) for Avasant to provide consulting services for sourcing strategy and subsequent selection of an outside vendor to deliver Information Technology services.

70. Avasant performed all of the conditions and obligations imposed upon it under the terms of the MSA and Presbyterian SOWs.

71. PHP materially breached the MSA and Presbyterian SOWs by, among other things, nonpayment for services without legal or contractual basis to do so.

72. Because of PHP's breach for nonpayment, Avasant is entitled to damages of at least $432,529.64 in unpaid fees, unreimbursed expenses, and damages, plus interest, attorney's fees and costs as a result of PHP's material breach of its obligations under the MSA and the Presbyterian SOWs.

## SECOND CAUSE OF ACTION

### (Breach of Implied-In-Fact Contract by PHP)

73. Avasant re-alleges and incorporates paragraphs 1-72 as though fully set forth herein.

74. Avasant provided services under the MSA and Presbyterian SOWs and fulfilled all requirements of the MSA and Presbyterian SOWs.

75. PHP refuses to pay Avasant for certain services provided by Avasant which PHP requested and authorized. Rather than issue a notice of suspension or termination, PHP continued its engagement with Avasant, requested services from Avasant, provided instructions and direction to Avasant, and actively participated in meetings at Avasant's headquarters and accepted deliverables created by Avasant. Therefore, PHP approved Avasant to continue to provide the ongoing services. Avasant reasonably relied on the terms of the Presbyterian SOWs and PHP's subsequent conduct, with the reasonable expectation that Avasant would be paid for those services under the Presbyterian SOWs.

76. PHP received services under the Presbyterian SOWs and, as a result, committed a material breach of implied contract by withholding payment of the fees for the services provided. During the Presbyterian SOWs, Avasant provided services at a rate of $21,500.00 per week per work stream. Avasant provided the services and PHP withheld payment for services performed over 16 total weeks across the three work streams. During that period, Avasant could have deployed its resources on other projects and sales generation. Moreover, Avasant is owed $70,899.61 in reimbursable expenses which PHP unjustifiably refuses to pay. Therefore, Defendant has been unjustly enriched and Avasant has been harmed in the amount of at least $432,529.64 in unpaid fees, unreimbursed expenses, and damages plus interest, attorney's fees and costs.

77. PHP's conduct, as described in this Complaint, was malicious, wanton, oppressive and/or fraudulent. Avasant accordingly is entitled to an award of punitive damages against Presbyterian, in an amount sufficient to deter similar future conduct.

## THIRD CAUSE OF ACTION

### (Breach of Written Contract by PHS)

78. Avasant re-alleges and incorporates paragraphs 1-77 as though fully set forth herein.

79. On March 7, 2016, PHS and Avasant entered into a written contract (i.e., the MSA and Presbyterian SOWs) for Avasant to provide consulting services for sourcing strategy and subsequent selection of an outside vendor to deliver Information Technology services.

80. Avasant performed all of the conditions and obligations imposed upon it under the terms of the MSA and Presbyterian SOWs, except those conditions that are excused by Presbyterian's breaches and actions.

81. PHS materially breached the MSA and Presbyterian SOWs by, among other things, nonpayment for services without legal or contractual basis to do so.

82. Because of PHS's breach for nonpayment, Avasant is entitled to damages of at least $432,529.64 in unpaid fees, unreimbursed expenses, and damages, plus interest, attorney's fees and costs as a result of PHS's material breach of its obligations under the Presbyterian SOWs.

## FOURTH CAUSE OF ACTION

### (Breach of Implied-In-Fact Contract by PHS)

83. Avasant re-alleges and incorporates paragraphs 1-82 as though fully set forth herein.

84. Avasant provided services under the MSA and Presbyterian SOWs and fulfilled all requirements of the MSA and Presbyterian SOWs.

85. PHS refuses to pay Avasant for certain services provided by Avasant which PHS requested and authorized. Rather than issue a notice of suspension or termination, PHS continued its engagement with Avasant, requested services from Avasant, provided instructions and direction to Avasant, and actively participated in meetings at Avasant's headquarters and accepted deliverables created by Avasant. Therefore, Presbyterian approved Avasant to continue to provide the ongoing services. Avasant reasonably relied on the terms of the Presbyterian SOWs and

Presbyterian's subsequent conduct, with the reasonable expectation that Avasant would be paid for those services under the Presbyterian SOWs.

86.    PHS received services under the Presbyterian SOWs and, as a result, committed a material breach of implied contract by withholding payment of the fees for the services provided. During the Presbyterian SOWs, Avasant provided services at a rate of $21,500.00 per week per work stream. Avasant provided the services and PHS withheld payment for services performed over 16 total weeks across the three work streams. During that period, Avasant could have deployed its resources on other projects and sales generation. Moreover, Avasant is owed $70,899.61 in reimbursable expenses which Defendant unjustifiably refuses to pay. Therefore, Defendant has been unjustly enriched and Avasant has been harmed in the amount of at least $432,529.64 in unpaid fees, unreimbursed expenses, and damages plus interest, attorney's fees and costs.

87.    PHS's conduct, as described in this Complaint, was malicious, wanton, oppressive and/or fraudulent. Avasant accordingly is entitled to an award of punitive damages against PHS, in an amount sufficient to deter similar future conduct.

## PRAYER FOR RELIEF

WHEREFORE, Avasant prays for the following relief:

A.    A money judgment against each of the the Presbyterian Defendants (PHP and PHS), jointly and severally, for expectancy damages and all other recoverable contract damages, including reliance damages, special damages, consequential damages, compensatory damages, incidental damages, and punitive damages;

B.    Pre-judgment and post-judgment interest on such monetary relief;

C.    The costs of bringing this suit, including reasonable attorneys' fees; and

D.    All other relief to which Avasant may be entitled at law or equity.

## DEMAND FOR JURY TRIAL

Plaintiff Avasant hereby requests trial by jury on any and all claims so triable.

                    SUTIN, THAYER & BROWNE
                    A Professional Corporation


By */s/ Christopher A. Holland*
    Christopher A. Holland
Attorneys for Plaintiff Avasant
Post Office Box 1945
Albuquerque, New Mexico 87103-1945
Telephone: (505) 883-2500


4408793